MARY X. MARSHALL, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

SAME *vs.* SAME.

Middlesex.     March 23, 24, 1909. — June 24, 1909.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Carrier*, Passenger.   *Passenger*.   *Negligence*, Street Railway, Gross, Causing death.

At the trial of actions against a street railway company by an administrator to recover for the conscious suffering and death of the plaintiff's intestate, who was alleged to have been injured by reason of his having been thrown from a street railway car because it negligently was started with a jerk as he was getting upon it, the only evidence as to the circumstances of the accident was a statement made by the plaintiff's intestate before his death to the effect that he was stepping on the car and had one foot on the step when the conductor rang the bell and the jerk of the car threw him, and the testimony of an eyewitness who stated that the car had stopped or almost had stopped at the crossing where he saw the plaintiff's intestate standing, which was a crossing where passengers usually were taken on, that he did not see the plaintiff's intestate do anything before he got on the car, that he did not know whether the plaintiff's intestate signalled or not, that he heard no bell rung for the car to stop, that, as the plaintiff's intestate had his left foot upon the step and was reaching with his right hand, the conductor rang the bell for the car to start and the car started with a jerk and the plaintiff's intestate was thrown, and that he believed that the conductor saw the plaintiff's intestate. *Held*, that there was evidence for the jury upon the questions whether the plaintiff's intestate had become a passenger and whether the servants of the defendant were negligent in the operation of the car.

Evidence tending to show that the conductor of a closed electric street railway car, who was standing in the interior of the car as it stopped or almost stopped at a place where it was usual to take on passengers, saw a strong, healthy young

man about eighteen or nineteen years of age with his left foot on the step of
the car and reaching with his right hand in an attempt to get on to the car, and,
without waiting for the young man to reach a place of safety in the car, rang a
bell giving a starting signal to the motorman, who started the car with such a
jerk that the young man was thrown to the ground and received injuries from
which subsequently he died, will not warrant a finding that the conductor was
grossly negligent.

TWO ACTIONS OF TORT, one to recover for the death of, and
the other to recover for personal injuries to the plaintiff's intes-
tate alleged to have been caused by his being thrown from a
closed electric street car of the defendant at the corner of
Windsor Street and Cambridge Street in Cambridge as he was
attempting to enter the car.   Writs dated May 24, 1907.

The cases were tried together before *Hardy*, J.   The facts are
stated in the opinion.   At the close of the plaintiff's evidence,
the presiding judge ordered verdicts for the defendant; and the
plaintiff alleged exceptions.

*H. T. Richardson*, for the plaintiff.

*H. D. McLellan*, for the defendant.

LORING, J.   Verdicts were ordered for the defendant in both
actions at the conclusion of the plaintiff's case.   The plaintiff's
case or liability consisted of a statement of the plaintiff's intes-
tate and the testimony of one eyewitness.

The statement of the plaintiff's intestate was that he was step-
ping on the car, that he put his feet on the car when the con-
ductor rang the bell, and that the jerk of the car threw him on
his back.

The testimony of the eyewitness was that the car had stopped,
or had almost stopped, at the further side of Windsor Street, at
the crossing where the car would stop, meaning where the car
would stop for passengers.*   He further testified that the in-
testate put his left hand on the handle and his left foot on the
step, and was reaching with his right hand when the conductor
rang the bell for the car to start; that it started off at a fast
speed with a jerk, and that the plaintiff's intestate was thrown
off backward.   He also testified that the conductor was in the

---

* He also testified that he first saw the plaintiff's intestate standing on
the crossing, that he did not see him do anything before he got on the car,
and that he did not see whether he signalled or not.

middle of the car, facing the rear, and that there were eight or ten people in the car at the time.*

. The eyewitness heard no bell rung for the car to stop at Windsor Street. But that is not decisive. If a street car stops, or even comes almost to a stop at the usual place where it stops to take up passengers, an invitation is extended to become a passenger. The car had not wholly stopped in *Block* v. *Worcester*, 186 Mass. 526, and yet it was assumed that the jury could have found that the plaintiff had become a passenger. See p. 528. The same conclusion was reached in *Lockwood* v. *Boston Elevated Railway*, 200 Mass. 537, 542, 544. The plaintiff had a right to go to the jury on the question whether he had become a passenger on the principles stated in *Webster* v. *Fitchburg Railroad*, 161 Mass. 298, and applied in *Gordon* v. *West End Street Railway*, 175 Mass. 181, and in *Davey* v. *Greenfield & Turner's Falls Street Railway*, 177 Mass. 106. See also *Hogner* v. *Boston Elevated Railway*, 198 Mass. 260; *Lockwood* v. *Boston Elevated Railway*, 200 Mass. 537.

We are however of opinion that the jury were not warranted in finding that the conductor was guilty of gross negligence, and for that reason the presiding judge was right in ordering a verdict for the defendant in the first action.

The plaintiff cites *Gordon* v. *West End Street Railway*, 175 Mass. 181, as a decision that on this evidence the jury were warranted in finding gross negligence on the part of the conductor. But in that case the plaintiff's intestate was a feeble old man, seventy-four years of age, while the plaintiff's intestate in the case at bar was a strong, healthy young man about eighteen or nineteen years of age.

The exceptions in the first action must be overruled, and those in the second action sustained.

*So ordered.*

---

* The eyewitness, in response to the question, asked in cross-examination, " The conductor, so far as you could tell, did n't see Marshall at all, did he ? " answered, " I believe he did."